UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| TARRANCE BURTON, on behalf of himself and all other similarly situated consumers, <br><br> Plaintiff, <br><br> vs. <br><br> PORTFOLIO RECOVERY ASSOCIATES, LLC <br><br> Defendants. | Case No.: 5:18-cv-110 <br><br><br> CLASS ACTION COMPLAINT |

Plaintiff, Tarrance Burton (hereinafter "Plaintiff") alleges:

## PRELIMINARY STATEMENT

1.  This is an action for damages arising from violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692 *et seq.* (hereinafter "FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

## JURSIDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1692k (d).

3.  Venue is proper in this district under 28 U.S.C §1391(b).

## PARTIES

4.  Plaintiff is a natural person who at all relevant times has resided in San Antonio, Texas.

5.  Defendant Portfolio Recovery Associates, LLC regularly conducts business in Texas, while its corporate headquarters is located at 120 Corporate Boulevard, in Norfolk, Virginia 23502.

## BACKGROUND

6.      There are two types of reporting entities on consumer credit reports. One type of reporting entity is the credit reporting agency ("CRA"), which reports information about the Plaintiff to users of these credit reports. The second type is called a Furnisher in the credit reporting industry. A Furnisher is a creditor that furnishes information related to its experience with the Plaintiff to the CRAs.

7.      Credit reporting activities of both the CRAs and Furnishers are regulated by the FCRA.

8.      The FCRA's purpose is to ensure that CRAs and Furnishers follow proper procedure in ensuring that a consumer's credit report is reporting accurately.

9.      Every credit report contains a number of lines representing a placeholder for a specific Furnisher to report about a debt or credit line incurred by a consumer. These lines are known as trade lines.

10.     Trade lines have a number of fields which convey a significant amount of information to prospective creditors and which directly affect FICO credit scores.

11.     The Date Opened field represents the date that the consumer opened the underlying account. The Date Opened should remain uniform throughout each credit report disclosing the trade line as this date does not change regardless of whether the original creditor sells the debt to a third party.

12.     The Date of Status field represents the day a debt is deemed uncollectible and thus charged off. *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013). The Date of Status corresponds to a separate Status segment of the trade line. The Status segment reveals various forms of information concerning the trade line.

13.	The First Reported date reflects the date in which the debt had its first major delinquency or was first reported to the credit bureaus. *Toliver*, 973 F. Supp. 2d 723. This date also cannot be changed.

## FACTUAL STATEMENT

14.	On or before June 2017, Portfolio Recovery Associates, a debt collector, acquired a number of debts allegedly due and owing another, incurred through the use of various credit cards used primarily for personal, familial and household use.

15.	In attempt to collect a debt from Plaintiff, Portfolio placed a trade line on Plaintiff's credit report bearing account number 515599005533**** and showing a balance of $480.

16.	On or about June 2017, Plaintiff's credit report showed a Date Opened of March 2013, a Date First Reported of June 2017 and a Date of Status of June 2017.

17.	Plaintiff, through counsel, disputed this trade line with Experian.

18.	In response to Plaintiff's dispute, Portfolio illegally changed the date First Reported and Date of Status to reflect July 2017, on a report dated July 31, 2017. Clearly, considering that the trade line was on Plaintiff's report in June, this was not the correct date First Reported. Further, the Date of Status is more accurately recorded as a date well prior to 2016.

19.	Nonetheless, Portfolio failed to reinvestigate Plaintiff's dispute and properly verify the trade lines, and also improperly changed dates that should remain static.

20.	By making these dates appear more recent than they truly are, Plaintiff's credit score and credit worthiness is affected.

21.	Upon information and belief, Defendant made these changes in response to a lawful dispute by Plaintiff, invoking his rights under the FCRA.

22. Upon information and belief, whenever consumers invoke their dispute rights under the FCRA, Defendant punishes these consumers by making their delinquencies appear more recently than they truly are.

23. Defendant's placement of false, deceptive, and misleading information on the credit report violates the FCRA and FDCPA.

## CLASS ACTION ALLEGATIONS

### The Class

24. Plaintiff brings this as a class action pursuant to Fed. R. Civ. P. 23.

25. Plaintiff seeks certification of the following classes, initially defined as follows:

**FCRA Class: All consumers with a Texas address that incurred a debt upon which Defendant placed a trade line on the consumers' credit report and following a dispute by the consumer to Experian Information Services, Inc. improperly changed the date first reported and date of status on the consumers' Experian credit report within five years prior to the filing of this complaint.**

**FDCPA Class: All consumers with a Texas address that incurred a debt for personal, familial and household use upon which Defendant placed a trade line on the consumers' Experian credit report and subsequently improperly changed the date first reported and date of status within one year prior to the filing of this complaint.**

26. Excluded from the Classes is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant.

### Numerosity

27. Upon information and belief, Defendant has improperly changed the dates on hundreds, if not thousands, of credit reports for consumers in Texas, each of which violates the FDCPA and FCRA. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

4

28. The actions taken by Defendant are to be evaluated by the objective standard of the hypothetical least sophisticated or unsophisticated consumer.

29. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### Common Questions of Law and Fact

30. There are questions of law and fact common to the class that predominates over any questions affecting only individual Class members. These common questions of law and fact include, without limitation: (i) whether Defendant violated various provisions of the FDCPA and FCRA; (ii) whether the Plaintiff and the Classes have been injured by the conduct of Defendant; (iii) whether the Plaintiff and the Classes have sustained damages and are entitled to restitution as a result of Defendants wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and (iv) whether the Plaintiff and the Classes are entitled to declaratory and/or injunctive relief.

### Typicality

31. The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Classes defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein. Plaintiff's claims are typical of the claims of the Classes, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Classes.

### Protecting the Interests of the Class Members

32. Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

33. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

### **Proceeding Via Class Action is Superior and Advisable**

34. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, this being specifically envisioned by Congress as a principal means of enforcing the FDCPA, as codified by 15 U.S.C.§ 1692(k).

35. The members of the Classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

36. Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

37. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

38. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

39. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

40. Absent a class action, the members of the Classes will continue to suffer losses borne from Defendant's breaches of Class members' statutorily protected rights as well as monetary damages, thus allowing and enabling: (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

41. Defendant has acted, and will act, on grounds generally applicable to the Classes, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT

42. Plaintiff realleges the above paragraphs as if recited specifically set forth at length herein.

43. At all times pertinent hereto, Portfolio was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

44. Portfolio willfully and negligently supplied Experian with information about Plaintiff that was false, misleading, and inaccurate.

45. Portfolio willfully and negligently failed to conduct an investigation of the inaccurate information that Plaintiff disputed, and continued to report dates that were inaccurate.

46. Portfolio willfully and negligently failed to report the results of its investigation to the relevant consumer reporting agencies.

47. Portfolio willfully and negligently failed to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies, concerning the inaccurate information disputed by Plaintiff.

48. Portfolio willfully and negligently continued to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to credit reporting agencies.

49. Portfolio willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

50. Portfolio's conduct, action and inaction was willful, rendering it liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Portfolio was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, PLAINTIFF PRAYS that this court grant him a judgment against Portfolio for the greater of statutory or actual damages, plus punitive damages along with costs, interest, and attorney's fees.

## COUNT II
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## BY PORTFOLIO

51. Plaintiff realleges the above paragraphs as if recited specifically set forth at length herein.

52. Portfolio has placed erroneous information on key components of Plaintiff's credit report including the date First Reported, Date Opened, and the Date of Status in violation of 15 U.S.C. §§ 1692e, e(2), and e(10).

53. Section 1692e provides:

> **§ 1692e. False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

> **(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. .**
>
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

54. By engaging in numerous violations of the FDCPA in order to collect a debt from Plaintiff, Portfolio has violated 15 U.S.C. § 1692f.

55. Section 1692f provides:

> **§ 1692f. Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.**

WHEREFORE, Plaintiff, Tarrance Burton, respectfully requests that this Court do the following for the benefit of Plaintiff:

    A. Enter an Order declaring Defendant's actions, as described above, in violation of the FDCPA and the FCRA;

    B. Enter an Order for injunctive relief prohibiting such conduct in the future;

    C. Appoint Plaintiff as the Representative for the Classes, and appoint Plaintiff's Counsel as Lead Counsel for the Classes;

    D. Enter judgment against Defendant for statutory damages, pursuant to 15 U.S.C. § 1692k;

    E. Award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k; and,

    F. Grant such other and further relief as may be just and proper.

## **JURY TRIAL DEMAND**

56. Plaintiff demands a jury trial on all issues so triable.

Dated this 2nd of February, 2018.

                                          Respectfully Submitted,

                                          /s/ Daniel Zemel
                                          Daniel Zemel
                                          **Zemel Law LLC**
                                          78 John Miller Way
                                          Suite 430
                                          Kearny, New Jersey 07032
                                          (P) (862) 227-3106
                                          dz@zemellawllc.com
                                          Attorney for Plaintiff